## SAMUEL E. SEWALL *vs.* BOSTON WATER POWER COMPANY & others.

If the owner of a certificate of shares in a corporation sells a portion of them and executes and delivers an assignment thereof, by partially filling up a blank form which is printed for that purpose upon the back of the certificate, and is guilty of no want of care in the mode of filling up the same, and the assignment is afterwards altered so as to purport to assign the whole of the shares, and the corporation negligently and carelessly assign and transfer and issue new certificates to others for the whole of the shares, the corporation is liable to make good to the owner the amount wrongfully transferred.

BILL IN EQUITY against the Boston Water Power Company, John B. Neale, William W. Keith, Joseph W. Davis, William H. L. Smith, and Clark, Cheney & Co., to compel them to procure for the plaintiff a certificate of one hundred and fifty shares of the capital stock of the Boston Water Power Company, in

place of shares formerly belonging to him and transferred under the circumstances stated in the opinion; and to compel the Water Power Company to pay to him a dividend thereon of five dollars per share, which had been declared by them. The case came on to be heard before *Chapman*, J., upon the bill answer and evidence taken by consent of parties before a mas ter, and was reserved for the determination of the whole court.

*I. F. Redfield & S. E. Sewall*, for the plaintiff, cited, in addi tion to some of the cases cited in the opinion, *Hall* v. *Fuller*, 5 B. & C. 750; *Pigot's case*, 11 Co. 26, b.; *Master* v. *Miller*, 4 T. R. 320; S. C. 2 H. Bl. 141, and 1 Smith's Lead. Cas. (5th Amer. ed.) 458, & Amer. note; *Henman* v. *Dickinson*, 5 Bing. 183; *United States* v. *Linn*, 1 How. (U. S.) 112; *Davidson* v. *Cooper*, 13 M. & W. 343, 352; *Taylor* v. *Mosely*, 6 C. & P. 273; *Davis* v. *Jenney*, 1 Met. 221; *Harrison* v. *Pryse*, Barnard. 324, 326; S. C. *nom. Harrison* v. *Harrison*, 2 Atk. 121; *Davis* v. *Bank of England*, 2 Bing. 393; *Tayler* v. *Great Indian Peninsula Railway*, 4 De Gex & J. 559; *Bridgeport Bank* v. *New York & New Haven Railroad*, (Supreme Court of Conn., not yet reported); *Goodman* v. *Harvey*, 4 Ad. & El. 870.

*P. W. Chandler & G. O. Shattuck*, for the Boston Water Power Company. The title of Smith to the one hundred shares standing in his name cannot be supported. A certificate of stock is not in any sense negotiable; and, the certificate having been issued by mistake, by the agent of the corporation, the corporation are not estopped by it. *Mechanics' Bank* v. *New York & New Haven Railroad*, 4 Duer, 480, 583; S. C. 3 Kernan, 620. *Hilton* v. *Swan*, 7 J. Scott, 398. *Hildyard* v. *South Sea Co.* 2 P. W. 76. *Athenæum Life Assurance Society*, v. *Pooley*, 3 De Gex & J. 294. *Birckhead* v. *Brown*, 5 Hill, (N. Y.) 634, 646. *Freeman* v. *Cooke*, 2 Exch. 663. See also several of the cases cited by the plaintiff. As to the other fifty shares, the property has been lost, and the plaintiff's negligence has contributed to the loss. *Young* v. *Grote*, 4 Bing. 253. *Coles* v. *Bank of England*, 10 Ad. & El. 437. *Russel* v. *Langstaffe*, 2 Doug. 514.

*A. A. Ranney*, for J. B. Neale.

*J. B. Robb*, for W. W. Keith and J. W. Davis.

*F. A. Brooks*, for Clark, Cheney & Co.

CHAPMAN, J.   Upon the evidence as reported, the court are of opinion that, as between the plaintiff and the Water Power Company, his stock has been transferred and lost to him through their fault, and without negligence or fault on his part.

He had a single certificate for two hundred shares, on the back of which was printed a blank form, prepared by the company, for an assignment of shares.   He proposed to sell fifty shares, and employed Thomas R. Sewall, a broker, to make the sale.   The shares were sold to William W. Keith, a broker, the name of his principal not being disclosed.   The blank form for the assignment was then filled, so far as was necessary, by writing the word "fifty" in the proper space to indicate the number of shares sold, and with two marks in ink before it to indicate that nothing else should be written there; and also a line in ink drawn through the blank before the word "shares," to show that nothing should be written there.   The date was filled up, and the assignment was then signed by the plaintiff and witnessed by his broker, who delivered the certificate, with this assignment of fifty shares on its back, to Keith.   A blank was left for the name of the assignee, and also for the consideration.   The assignment as delivered is copied in the margin.*

The delivery gave to the holder the right to fill these blanks, but not to alter the part stating the number of shares assigned. By the exercise of ordinary care, any person could see on

---

\* "In consideration of                                         Dollars, to me paid, I do hereby sell and assign to

of              === *Fifty* of the within named ———————— Shares of the Corporate Stock of the BOSTON WATER POWER COMPANY.

   "Witness my hand and seal, this *15* day of *March* A. D. eighteen hundred and *sixty*.                                    S. E. SEWALL.

"Signed, Sealed, and delivered, }
     in presence of                }
      T. R. SEWALL."

inspection that only fifty shares were assigned, and that the remaining one hundred and fifty still belonged to the plaintiff. The plaintiff's broker testifies that this course is common, and there is no evidence to the contrary; and we cannot see why it is not a safe and prudent course. For any alteration in the number of the shares assigned would be obvious on inspection, as it was in this case, or else it must be done by a very ingenious forgery.

If there was an obvious alteration, it would be the duty of the defendants to ascertain whether it was authorized, before making a transfer of the shares to the assignee; otherwise they would run the risk of its being unauthorized. If it was a forgery, it would be void, and no one could acquire a title under it, unless the plaintiff should be guilty of negligence in respect to it. If it were carried to the office of the company for the purpose of procuring a transfer of the fifty shares, the company would retain it; would issue a new certificate to the assignee of the fifty shares; and whenever the plaintiff should have occasion to take a new certificate for his one hundred and fifty remaining shares, the files and books of the company would show that he was still the owner of them, and had not transferred them. His property ought to be as safe without a certificate as with one.

The real purchaser was John B. Neale, and the certificate was delivered to him. He filled the proper blank with the words " J. B. Neale, trustee," and probably inserted the word " ten " in the blank for the consideration. Having occasion to borrow money of Clark, Cheney & Co., on a pledge of the fifty shares, he erased the words " J. B. Neale, trustee," and left the certificate with them, in order that they might get the shares transferred. Their clerk, J. E. Bullard, was by some misunderstanding led to believe that the remaining shares belonged to Allen, Neale & Co., a firm of which Mr. Neale was a member. He accordingly wrote in the blank from which Neale's name was erased, the words " J. E. Bullard, Trt. 50 ; Allen, Neale & Co., 150 ; " which was intended to indicate that all the shares were sold, but leaving the language of the assignment absurd and

contradictory. If this had been done fraudulently, it would have been a forgery; but there seems to have been no fraud, and it was merely an act of gross carelessness and wholly unauthorized. He carried the certificate to the office of the company, either in this condition, or with the additional alteration of an erasure of the word "fifty." He found at the treasurer's office J. W. Le Barnes, the clerk of the treasurer. Common prudence would have dictated to him to refuse to transfer the shares on the strength of an assignment thus mutilated and altered, and so contradictory and absurd as it then was. Without any fraudulent intent, but with gross carelessness, he undertook to alter the assignment still more. Probably he erased the word "fifty," though this may have been done by Bullard. He wrote upon the ink line "two hundred," in the space before "shares;" inserted in another space the word "all," and erased a superfluous "of;" and thus by his own act made it a proper assignment of the plaintiff's shares, so far as its language was concerned. After these various alterations, the assignment stood as represented in the margin.*

Bullard then transferred the shares in accordance with this assignment. Allen, Neale & Co., to whom one hundred and fifty of the shares were issued, became insolvent, and the shares were assigned to Keith as trustee, and a certificate was issued to him accordingly. Keith subsequently transferred twenty-five shares to Davis, and one hundred and twenty-five to Smith. Of these, one hundred yet stand in the name of Smith, and the

---

* " In consideration of                   *ten* Dollars, to me paid, I do hereby sell and assign to ~~J. B. Neale, Trustee,~~

*J. E. Bullard, Trt.*    50

*Allen, Neale & Co.* 150

*Two hundred*

~~of~~     *all*     ~~Fifty~~ of the within named ——————— Shares of the Corporate Stock of the BOSTON WATER POWER COMPANY.

" Witness my hand and seal, this *15* day of *March* A. D. eighteen hundred and *sixty.*           S E. SEWALL.

" Signed, Sealed, and delivered, } in presence of }

    T. R. SEWALL."

remaining fifty cannot be distinctly traced. For the wrongful act of the treasurer's clerk in transferring the one hundred and fifty shares, under the circumstances stated, the Water Power Company are responsible.

The authorities cited show that a certificate of stock is not a negotiable instrument; and without any authorities it is apparent that it has not a negotiable character. But this point is not material. If the plaintiff's carelessness had been such as to excuse the transfer of the stock to other parties, he could not now claim the stock. The case of *Young* v. *Grote*, 4 Bing. 253, related to a negotiable instrument. The plaintiff's agent had filled up his check so carelessly that it did not carry on its face any notice to the banker that it had been altered, and its payment by the banker was excused by this fault of the plaintiff. *Coles* v. *Bank of England*, 10 Ad. & El. 437, was a case of the transfer of stocks which were not negotiable. The transfer by the bank was excused, because the testator had conducted in the matter with gross carelessness. Therefore, whether the paper be negotiable or not, the law is the same: the plaintiff must exercise reasonable care, adapted to the circumstances of the case; and so must the defendant.

We need not discuss the doctrine of estoppel alluded to in argument, because we do not put the case on that ground.

As to the other defendants, it was proper to make them parties, because they have been parties to the transfer of the one hundred and fifty shares of stock. Upon the evidence, Neale and some of the other parties would probably be liable to the plaintiff in an action at law for their participation in the unauthorized transfer. By direction of Neale, the shares were transferred from Clark, Cheney & Co. to Keith, in trust, and by him to Smith and Davis, in conformity with sales that Neale had made. What claim the Water Power Company may have upon any of these parties cannot be decided in this case. But the plaintiff, having demanded of the company a certificate of one hundred and fifty shares, had a right to it, and to the shares represented by it. He has also a right to the dividends which have been declared on these shares since they have been

withheld from him. As it appears that the shares are constantly for sale in market, the payment to him of their market price at the time of entering the decree will be a full and adequate compensation for them ; and an alternative decree may be entered, the plaintiff consenting to it, either for the transfer to him of one hundred and fifty shares, or their market value in money.

There being no occasion for any decree as to the other parties, and there being equities as between them and the Water Power Company that cannot be settled in this suit, the bill may be dismissed as to them, without costs to either party.